IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS PALAGANO, | : | |
| individually and on behalf of all others | : | CIVIL ACTION |
| similarly situated, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| NVIDIA CORPORATION, | : | No. 15-1248 |
| *Defendant*. | : | |

PRATTER, J.                                                                                                                                        AUGUST 19, 2015

**MEMORANDUM**

**I.     FACTUAL BACKGROUND**

Francis Palagano alleges that he purchased a GeForce GTX 970 ("GTX 970"), a computer graphics chip, from NVIDIA Corporation ("NVIDIA") in reliance on NVIDIA's material misstatements about the GTX 970's capabilities. In this putative class action lawsuit arising from those alleged misrepresentations, Mr. Palagano claims (on behalf of a class of Pennsylvania residents who purchased the GTX 970) that NVIDIA is liable for (1) negligent misrepresentation, (2) breach of an express warranty, (3) breach of an implied warranty of merchantability, (4) assumpsit and unjust enrichment, (5) breach of contract, and (6) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1.

Twelve other class action lawsuits arising from NVIDIA's alleged misrepresentations regarding the GTX 970—and purporting to state claims on behalf of a nationwide class, with subclasses representing purchasers from California, Michigan, Florida, New York, Illinois, Missouri, Oklahoma, and Connecticut, but *not* Pennsylvania—have been consolidated in the U.S. District Court for the Northern District of California (the "Consolidated Proceeding"). The first such class action was filed on February 19, 2015, several weeks *before* Mr. Palagano filed his

1

lawsuit in this jurisdiction. Mr. Palagano's original complaint purported to state claims on behalf of a nationwide class, with a Pennsylvania subclass.

In April 2015, Mr. Palagano's counsel filed a declaration in the Consolidated Proceeding in support of a Joint Motion for Appointment of Interim Class Counsel. In that declaration, counsel averred, "On the premise that this case will be managed before [the U.S. District Court for the Northern District of California] by a relatively small group of experienced consumer class action attorneys, thereby assuring an effective and efficient prosecution, I have agreed, on behalf of my clients, to voluntarily coordinate the transfer of my clients' cases in other jurisdictions to the Court, thereby avoiding proceedings before the Judicial Panel on Multidistrict Litigation, or potentially duplicitous [sic] litigation." (Branda Decl., Ex. A at ¶ 6). However, after his counsel was not appointed as interim class counsel in the Consolidated Proceeding, Mr. Palagano elected *not* to transfer his case to the Northern District of California, and, instead, he amended his complaint here to state claims only on behalf of Pennsylvania residents who purchased the GTX 970.

NVIDIA now moves to transfer this lawsuit to the U.S. District Court for the Northern District of California for inclusion in the Consolidated Proceeding.

## II.   LEGAL STANDARD

### A.   THE FIRST-FILED RULE

"The first-filed rule counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts." *Chavez v. Dole Food Co., Inc.*, --- F.3d ----, No. 13-4144, 2015 WL 4732386, at *4 (3d Cir. Aug. 11, 2015); *see EEOC v. Univ. of Penna.*, 850 F.2d 969, 971 (3d Cir. 1988) ("[The first-filed rule] gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court."); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929

(3d Cir. 1941) ("In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." (quoting *Smith v. McIver*, 22 U.S. 532, 536 (1824) (Marshall, J.))). The first-filed rule permits courts to consolidate similar cases by transferring later-filed cases for consolidation with the first-filed case. *See, e.g.*, *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 456-57 (E.D. Pa. 2013). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *EEOC*, 850 F.2d at 971; *see Chavez*, 2015 WL 4732386, at *4.

Although there is no question that cases that are sufficiently similar are subject to the first-filed rule, courts in the Third Circuit differ with respect to the degree of similarity that is required. Some courts have adopted a narrow approach to the first-filed rule, requiring practically identical claims between identical parties arising from identical circumstances for the rule to apply. *See, e.g.*, *Century Indem. Co. v. Certain Underwriters at Lloyd's*, No. 09-94, 2010 WL 92531, at *3 (E.D. Pa. Jan. 11, 2010); *CertainTeed Corp. v. Nichiha USA, Inc.*, No. 09-3932, 2009 WL 3540796, at *3-4 (E.D. Pa. Oct. 29, 2009); *PhotoMedex, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 09-896, 2009 WL 2326750, at *5 (E.D. Pa. July 28, 2009). Courts adopting this narrow approach rely on language from one of two cases decided by the Third Circuit Court of Appeals. First, in *Grider v. Keystone Health Plan Century*, 500 F.3d 322 (3d Cir. 2007), our Court of Appeals explained that for the first-filed rule to apply, the second-filed case "must be truly duplicative . . . that is . . . materially on all fours with the [first-filed case]. . . . The issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id.* at 333 n.6. Second, in *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37 (3d Cir. 1980), the Court of Appeals explained that the first-filed rule requires that "only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate." *Id.* at 40.

Other courts have adopted a more flexible approach to the first-filed rule, finding that the rule applies to cases that are substantially similar. *See, e.g.*, *Synthes*, 978 F. Supp. 2d at 457; *D&L Distribution, LLC v. Agxplore Inc.*, 959 F. Supp. 2d 757, 769 (E.D. Pa. 2013); *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008); *QVC Inc. v. Patiomats.com, LLC*, No. 12-3168, 2012 WL 3155471, at *3 (E.D. Pa. Aug. 3, 2012); *Villari Brandes & Kline, PC v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236 (E.D. Pa. June 26, 2009); *Maximum Human Performance, Inc. v. Dymatize Enterprises, Inc.*, No. 09-235, 2009 WL 2778104, at *3 (D.N.J. Aug. 27, 2009); *Reisman v. Van Wagoner Funds, Inc.*, No. 02-12, 2002 WL 1459384, at *1-2 (D. Del. June 7, 2002). Courts adopting the flexible approach conclude that "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *Villari Brandes & Kline, PC*, 2009 WL 1845236, at *6. In other words, the "substantive touchstone of the first-to-file inquiry is subject matter." *Shire U.S.*, 543 F. Supp. 2d at 409.

In keeping with the discretion extended to it, the Court finds the flexible approach to be proper because it is more consistent with the purposes of the first-filed rule. By assessing the appropriateness of the first-filed rule on a case-by-case basis, without reference to rigid requirements regarding similarities between parties and claims, courts may exercise their discretion to promote efficiency and comity. For example, "it is not unusual that class actions are resolved by settlement, and the settlement process can be complicated and made burdensome, and even frustrated, if two courts are attempting to deal with" the same subject matter. *Byerson v. Equifax Information Servs., LLC*, 467 F. Supp. 2d 627, 636 (E.D. Va. 2006). Thus, even if the claims in two separate class actions do not involve identical parties, it would be extremely difficult to ignore the

efficiency gains that might result from consolidation. Additionally, "if application of the first-filed rule required complete identity of issues and parties, then defendants in the first-filed action may be incentivized to forum shop and commence similar but non-identical actions in other venues," causing substantial duplication of effort and potentially resulting in inconsistent rulings. *Sinclair Cattle Co., Inc. v. Ward*, No. 14-1144, 2015 WL 268784, at *4; *see also Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011). Under the flexible approach, courts can intelligently exercise discretion to promote comity in appropriate cases. Indeed, the flexible approach does more than the narrow approach to promote comity because it allows a court greater leeway in deferring to a sister court in which an obviously similar (but not identical) case was first filed.

The narrow view's reliance on *Grider* and *Chatterjee* is misplaced. The relevant language from *Grider* is dicta, and "[d]ictum in a court of appeals' decision does not bind lower courts." *Synthes*, 978 F. Supp. 2d at 456; *see Grider*, 500 F.3d at 333 n.6. The language from *Chatterjee* says only that deference "may not be appropriate" where the cases are not identical; it does *not* say that transfer is *never* appropriate under those circumstances. *See Chatterjee*, 636 F.2d at 40. Given that the Court of Appeals has never squarely decided the necessary degree of similarity between cases in order to invoke the first-filed rule, *see, e.g.*, *Chavez*, 2015 WL 4732386, at *3 (applying the first-filed rule to a case that the parties agreed was "materially identical" to an earlier-filed case, but noting that the first-filed rule applies to cases that involve "the same issues and parties" and not specifically addressing the narrow and flexible approaches to the first-filed rule), the Court concludes that the purposes underlying the rule weigh in favor of the flexible approach.

    B.    MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A)

A district court may decide "[f]or the convenience of the parties and witnesses, in the interest of justice," to transfer any civil action to any other district or division where the action

5

might have been brought. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation omitted).

While there is no definitive set of factors that must be considered prior to transfer, in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), the Third Circuit Court of Appeals enumerated many factors, private and public, courts have considered when determining whether to transfer an action pursuant to § 1404(a). Private interests include: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records . . . ." *Id.* at 879 (citations omitted). Public interests include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-880 (citations omitted).

The Court acknowledges the familiar maxims that in considering a transfer request, "a plaintiff's choice of forum is entitled to great weight and is not to be disturbed unless the balance of convenience strongly favors the defendants' forum," *Blanning v. Tisch*, 378 F. Supp. 1058, 1060 (E.D. Pa. 1974) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970)), and that the moving party bears the burden of establishing that the transfer is necessary, *see Jumara*, 55 F.3d at 879. Nevertheless, notwithstanding the plaintiff's choice of forum and the *Jumara* factors, "courts

in our district have held that where there is a strong likelihood of consolidation with a related action, a transfer of venue is warranted." *Villari Brandes & Kline, PC*, 2009 WL 1845236, at *5 (citing, e.g., *Prudential Ins. Co. of Am. v. Rodano*, 493 F. Supp. 954, 95 (E.D. Pa. 1980)); *see Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."). "In fact, the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of the parties and witnesses, would suggest the opposite." *Villari Brandes & Kline, PC*, 2009 WL 1845236, at *5 (collecting cases); *see also Elan Suisse Ltd. v. Christ*, No. 06-3901, 2006 WL 3838237, at *4 (E.D. Pa. Dec. 29, 2006). Therefore, "the existence of a related action in another district is a sound reason for favoring transfer when venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum." *Villari Brandes & Kline, PC*, 2009 WL 1845236, at *5.

### III. DISCUSSION

#### A. APPLICABILITY OF THE FIRST-FILED RULE

Applying the first-filed rule to the facts of this case, the Court finds that transfer is appropriate. Mr. Palagano's lawsuit states substantially similar claims, and arises from the exact same conduct, as the 12 other lawsuits consolidated in the Northern District of California, including three lawsuits that were filed before Mr. Palagano filed suit. There is no doubt that NVIDIA's alleged misrepresentations are at the core of Mr. Palagano's case and the earlier-filed cases. Indeed, both Mr. Palagano and the plaintiffs in the earlier-filed cases allege that NVIDIA's alleged misrepresentations were made across the United States, meaning that the exact same representations are at the heart of each lawsuit. Such a substantial similarity is sufficient to trigger the first-filed

7

rule. Furthermore, as a result of that similarity, the Pennsylvania litigation would, in many respects, duplicate the litigation in California. For example, whether or not NVIDIA's claims are false or misleading constitutes a common question of fact that would have to be decided, based on identical evidence, in both fora. Because the witnesses and evidence regarding NVIDIA's alleged misrepresentations would be the same in both this case and the Consolidated Proceeding, the first-filed rule—which is intended to avoid such inefficiencies—should apply.

Additionally, failure to apply the first-filed rule in this case would create a risk of promoting forum shopping. Plaintiff's counsel demonstrated a willingness to litigate in the Northern District of California when it agreed to transfer this case—including the Pennsylvania subclass—"[o]n the premise that this case will be managed before [the U.S. District Court for the Northern District of California] by a relatively small group of experienced consumer class action attorneys, thereby assuring an effective and efficient prosecution." (Branda Decl., Ex. A at ¶ 6). Although the parties agreed at oral argument that "a relatively small group of experienced consumer class action attorneys" (albeit one that did not include Plaintiff's counsel) had been appointed interim class counsel in the Consolidated Proceeding, (*see* Oral Arg. Tr. 26:25-27:8), Mr. Palagano's counsel nevertheless argued that the terms of his conditional agreement to transfer had not been met. Yet despite counsel's ample opportunity at oral argument here to explain why the cases are so dissimilar that consolidation under the first-filed rule is inappropriate, counsel was unable to articulate any compelling distinctions or differences. To the extent counsel argued that the differences between Pennsylvania law and California law justify the decision not to transfer the case, the Court notes that counsel was unable to articulate how the issues in this case would be decided differently under Pennsylvania law and California law, or how Mr. Palagano would or could be prejudiced by the application of California law, which is often viewed as "consumer-friendly." *See Evans v. Linden*

*Research, Inc.*, 763 F. Supp. 2d 735, 741 n.6 (E.D. Pa. 2011). To the extent Mr. Palagano's counsel contended that the agreement to transfer was conditioned upon their selection as interim class counsel, (*see* Oral Arg. Tr. 25:14-18), or that the leadership structure in the Consolidated Proceeding will hinder counsel's ability to represent Mr. Palagano, the Court notes that the prior agreement was conditioned on interim class counsel's qualifications, not interim class counsel's identity. Mr. Palagano's counsel conceded that there is no risk of prejudice to Mr. Palagano resulting from "some lack of skill or professionalism" on the part of selected interim class counsel. (*See* Oral Arg. Tr. 26:25-27:4). And without more to suggest that the leadership structure will not promote the "effective and efficient prosecution" of Mr. Palagano's case, the leadership structure without Mr. Palagano's counsel in the Consolidated Proceeding is not enough to justify duplicative litigation. Under these circumstances, to permit parties to maintain separate actions involving many of the exact same questions of fact and law would increase the risks of encouraging forum-shopping, inconsistent verdicts, and lack of comity, thereby undermining the efficacy of the policies underlying the first-filed rule.

Mr. Palagano relies on an unpublished case from the Eastern District of California to argue that the first-filed rule does not apply in this case. In *Wilkie v. Gentiva Health Services*, No. 10-1451, 2010 WL 3703060 (E.D. Cal. Sept. 16, 2010), the first-filed action brought state and federal claims on behalf of a nationwide class, with North Carolina and New York subclasses, and the second-filed action brought federal and California state law claims against the same defendant on behalf of a nationwide class, as well as a California subclass. *Id.* at *4-6. The district court refused to apply the first-filed rule, concluding that the California subclass was "separate and distinct" from any of the subclasses in the first-filed action. *Id.* at *4. But for the reasons stated above, *see supra* Part II.A, the Court disagrees with the premise of *Wilkie* that cases must be practically identical in

order for the first-filed rule to apply. Both Mr. Palagano's putative class action and the other putative class actions pursue essentially the same claims based on the same set of facts. For that reason, the cases are substantially similar, the first-filed rule applies, and transfer to the Northern District of California is appropriate.

        B.      *JUMARA* FACTORS

In the alternative, even if transfer were inappropriate under the first-filed rule, the Court finds that transfer is warranted under § 1404(a). For the reasons that follow, the Court finds that although the first, fourth, and tenth *Jumara* factors weigh against transfer, the second, third, seventh, and ninth *Jumara* factors weigh in favor of transfer, and the remaining *Jumara* factors are neutral. Upon consideration of all the *Jumara* factors together, the Court finds that the balance of those factors weighs in favor of transfer.

        1.      Plaintiff's Choice of Forum

Mr. Palagano's choice of forum in the Eastern District of Pennsylvania is entitled to some degree of deference because Mr. Palagano and all members of the putative class reside in Pennsylvania, allegedly purchased the product in Pennsylvania, and suffered their alleged damages in Pennsylvania. This factor weighs against transfer.

        2.      Defendant's Preference

NVIDIA's preference that the Northern District of California serve as the venue is similarly entitled to deference because there are 12 putative class actions pending in the Northern District of California based on NVIDIA's alleged misrepresentations regarding the capabilities of the GTX 970. As explained above, "the presence of a related case in the transferee forum is a powerful reason to grant a change of venue." *Elan Suisse*, 2006 WL 3838237, at *4. Indeed, "courts in this District have concluded that this factor alone is sufficient to warrant a transfer." *Schiller-Pfeiffer,*

*Inc. v. Country Home Prods., Inc.*, No. 04-1444, 2004 WL 2755585, at *8 (E.D. Pa. Dec. 1, 2004). "[T]he presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors . . . would suggest the opposite." *Transcore, LP v. Mark IV Indus. Corp.*, No. 09-2789, 2009 WL 3365870, at *6 (E.D. Pa. Oct. 15, 2009) (internal quotation marks omitted). Thus, Defendant's preference under these circumstances is not overshadowed by Plaintiff's choice of forum, but rather overcomes that ordinarily "paramount concern." *Sandvik, Inc. v. Cont'l Ins. Co.*, 724 F. Supp. 303, 307 (D.N.J. 1989). As a result, this factor weighs strongly in favor of transfer.

### 3.     Where the Claims Arose

Mr. Palagano argues that the claims arose in Pennsylvania because that is where the putative class members purchased the GTX 970s, thereby suffering an alleged injury. NVIDIA argues that the claims arose in California because the alleged misrepresentations were made in California and thereafter disseminated across the country, eventually reaching Pennsylvania. "Typically the most appropriate venue is where a majority of events giving rise to the claim arose." *In re Amkor Tech, Inc. Sec. Litig.*, No. 06-298, 2006 WL 3857488 (E.D. Pa. Dec. 28, 2006). "Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred." *Ayling v. Travelers Property Cas. Corp.*, No. 99-3243, 1999 WL 994403, at *5 (E.D. Pa. Oct. 28, 1999). More specifically, in the context of claims based on misrepresentations or omissions, "misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received." *Kerik v. Tacopina*, No. 14-488, 2014 WL 1340038, at *5 (D.N.J. Apr. 3, 2014). Although the putative class members claim to have suffered their injury by purchasing the product while in Pennsylvania, NVIDIA's representations and warranties regarding

the GTX 970—the basis for the putative class claims—occurred in California. This factor weighs in favor of transfer.

### 4. The Convenience of the Parties

The "relative physical and financial condition" of the parties suggests that Mr. Palagano would be burdened by having this case transferred to the Northern District of California. Mr. Palagano is an individual person residing in Coatesville, Pennsylvania. (*See* Am. Class Compl. ¶ 8). By contrast, "NVIDIA is a publicly-traded company with a market capitalization of $12.13 billion, annual revenue of $4.13 billion, and an annual EBITDA of $735 million." (Branda Decl., Ex. B ¶ 24). This clearly suggests that NVIDIA is more capable than Mr. Palagano of handling litigation in a distant forum.

At the same time, the Court is keenly aware of the burden on NVIDIA that would result from having to offer the same evidence and litigate the same issues in two different fora. "To the extent that fact witnesses are employees of [NVIDIA], while they may be available for trial in any forum, the extreme inconvenience and expense to [NVIDIA] of bringing them to trial in Philadelphia relates to the relative convenience of the parties to the suit." *York v. Norfolk S. Ry. Co.*, No. 12-4881, 2013 WL 842707, at *3 (E.D. Pa. Mar. 6, 2013) (emphasis omitted). Moreover, Mr. Palagano's counsel previously agreed to transfer this case to the Northern District of California voluntarily before reversing his decision in favor of not transfering the case. Because Mr. Palagano has made no representation that any material facts respecting the prosecution of the case have changed since the time of that initial agreement until today, the Court believes that counsel's prior agreement to transfer the case suggested that such a transfer would not unduly burden Mr. Palagano. As a result, this factor is most likely neutral, but at most weighs only slightly against transfer.

5.  The Convenience of the Witnesses

The convenience of the witnesses constitutes a *Jumara* factor "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. To the extent that witnesses are NVIDIA employees, NVIDIA can compel them to attend trial, so there is nothing to suggest that an NVIDIA employee would "actually be unavailable" to appear for trial in Pennsylvania. At the same time, Mr. Palagano's suggestion that the inconvenience he would suffer if the case were transferred to the Northern District of California are unavailing because "[t]he party witnesses are presumed to be willing to testify in either forum despite any inconvenience" and "[t]he convenience of non-party witnesses is the main focus" of this *Jumara* factor. *Hillard v. Guidant Corp.*, 76 F. Supp. 2d 566, 570 (M.D. Pa. 1999). Neither party has identified any specific non-party witnesses who might "actually be unavailable" if venue lay in one forum or another. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 & n.2 (3d Cir. 1973) (disapproving of the district court's conclusion that it was appropriate to transfer venue in the absence of evidence regarding, among other things, the identities and locations of potential witnesses who would be inconvenienced if the venue were not transferred). As a result, this factor is neutral.

6.  The Location of Books and Records

"[T]he technological advances of recent years have significantly reduced the weight of this factor in the balances of convenience analysis" because it is not difficult to produce books and records in an alternative forum. *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003). Here, there is no reason to believe that NVIDIA's books and records could not be produced in either forum. This factor is neutral.

7. Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive

Mr. Palagano argues that this factor is neutral because transferring venue "would do nothing more than [shift] the inconvenience from one party to another." (Pl.'s Mem. 13, ECF No. 28, June 19, 2015 (citing *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 446 (E.D. Pa. 1999) ("[T]he purpose of transfer is not to shift the inconvenience from one party to the other.")).[1] But Mr. Palagano ignores the fact that there are 12 other putative class actions pending in the Northern District of California against NVIDIA arising from the same alleged misrepresentations. It is therefore not the case that NVIDIA will be burdened a certain amount by having to litigate this case in the Eastern District of Pennsylvania, and Mr. Palagano would be burdened the same amount by having to litigate this case in the Northern District of California. Rather, NVIDIA would be burdened a great deal more by having to litigate this case in the Eastern District of Pennsylvania because it is defending lawsuits based on the same decisions at issue in this case in the proposed transferee forum. Practical considerations that could make the trial easy, expeditious, or inexpensive therefore weigh in favor of transfer.

8. The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion

The parties agree that both the Eastern District of Pennsylvania and the Northern District of California have the resources to allow this case to be litigated expeditiously, so this factor is neutral.

---

[1] Mr. Palagano also argues that NVIDIA's intent to seek early resolution of this matter renders a trial unlikely, so this factor is of less import than in other cases. But the prospect of settlement or some other alternative to trial will not change the fact that, in the event this case were to go to trial, practical considerations that could make the trial more efficient weigh in favor of transfer.

>		9.	The Public Policies of the Fora and the Local Interest in Deciding Local Controversies at Home

Mr. Palagano argues that Pennsylvania has a strong interest in deciding this matter because the putative class consists of Pennsylvania residents who suffered injuries as a result of violations of Pennsylvania law. Mr. Palagano concedes that California also has an interest in deciding this matter because NVIDIA's principle place of business is located in California, and the alleged misrepresentations originated in California. But the fact that GTX 970 was sold nationwide and that numerous other actions alleging substantially similar misconduct by NVIDIA were filed in other districts and are now pending in California suggests that (1) this is not a "local controversy" in Pennsylvania that should clearly be decided in Pennsylvania, and (2) California may have the strongest interest in deciding what most closely resembles a "local controversy" to California. Therefore, this factor most likely weighs in favor of transfer, but is at most neutral.

>		10.	The Court's Familiarity with the Applicable Law

"[A] federal court generally has greater expertise in interpreting and applying the law of its home state than federal courts domiciled in foreign jurisdictions." *Optimal Interiors, LLC v. HON Co.*, No. 09-1906, 2009 2009 WL 3837409, at *4 (E.D. Pa. Nov. 13, 2009). But "although the familiarity of the trial judge with applicable state law . . . is a consideration that could tip the balance in an otherwise close call," *E. Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, No. 14-717, 2015 WL 679220, at *5 (M.D. Pa. Feb. 17, 2015), "this factor is of little weight," *Meisenhelder v. Sunbury Transport, Ltd.*, No. 01-5624, 2002 WL 32308675, at *4 (E.D. Pa. Jan. 22, 2002). "'Federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit.'" *E. Roofing Sys.*, 2015 WL 679220, at *6. "Whether Pennsylvania or [California] law will apply [to Plaintiff's claims], the district court in [Northern California] is more than capable of applying that law." *McCraw v. GlaxoSmithKline*, No. 12-2119, 2014 WL 211343, at

15

\*7 (E.D. Pa. Jan. 17, 2014).[2] This factor is most likely neutral, but at most weighs only slightly against transfer.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that this case should be transferred to the Northern District of California under the first-filed rule or, in the alternative, under § 1404(a) and the *Jumara* factors. Therefore, the Court grants NVIDIA's Motion to Transfer Venue (Docket No. 24).

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[2] The Court notes that to decide whether the familiarity of the trial judge with the applicable state law weighs for or against transfer, "the court must first deal with the threshold question of which state's law applies." *Mimm v. Vanguard Dealer Servs., LLC*, No. 11-736, 2012 WL 4963315, at \*7 (D. Del. Oct. 16, 2012). The parties have not expressly briefed that question, and the Court does not mean to suggest that any particular state's law should apply. But even if Pennsylvania law were to apply, and even if there was some material difference between or among the state laws presented by the various sub-classes and even if this Court were deemed more familiar with the applicable Pennsylvania state law, the *Jumara* factors on the whole would still weigh in favor of transfer.